UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| L.H., *an individual*, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:22-CV-625-CHB-RSE |
| | ) | |
| v. | ) | |
| | ) | |
| RED ROOF INN, INC., *et al.*, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RED ROOF INN, INC., | ) | |
| | ) | |
| Third-Party Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SECURITAS SECURITY SERVICES, | ) | |
| USA, INC., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Third-Party Defendant Securitas Security Services USA, Inc.'s ("Securitas") Motion to Dismiss, [R. 80], Plaintiff L.H.'s Motion for Leave to Amend Complaint, [R. 89], and Defendant and Third-Party Plaintiff Red Roof Inn, Inc.'s ("Red Roof") Motion for Leave to File a Third-Party Complaint Against Imperial Security Services, Inc. ("Imperial"), [R. 101]. Securitas's and Plaintiff's motions are fully briefed. *See* [R. 84 (Defendant Red Roof Inn, Inc.'s Response in Opposition to Securitas Security Services USA, Inc.'s Motion to Dismiss Red Roof Inn, Inc.'s Third-Party Complaint)]; [R. 85 (Third-Party Defendant Securitas Security Services USA, Inc.'s Reply in Support of its Motion to Dismiss)]; [R. 90 (Third-Party

[1]

Defendant Securitas Security Services USA, Inc.'s Response in Opposition of Plaintiff's Motion for Leave to Amend Complaint)]; [R. 93 (Plaintiff's Reply in Support of Her Motion for Leave to Amend the Complaint)]. No party has responded to Red Roof's motion, [R. 101], and the time to do so has passed. As such, the motions are ripe and ready for the Court to review. For the following reasons, Securitas's Motion to Dismiss will be **DENIED**, Plaintiff's Motion to Amend will be **GRANTED**, and Red Roof's Motion for Leave to File a Third-Party Complaint will be **GRANTED**.

## I.   BACKGROUND

This action arises out of Plaintiff L.H.'s allegations that she was sex trafficked at several Kentucky hotels, including, as relevant here, two Red Roof Inn locations in Louisville. *See generally* [R. 1]. The two Red Roof Inn locations at issue are at 3322 Red Roof Inn Place, Louisville, Kentucky 40218 ("Red Roof Inn Place location") and 4704 Preston Highway, Louisville, Kentucky 40313 ("Preston Highway location"). *Id.* at ¶ 11(a). According to Plaintiff, she "was sex trafficked, sexually exploited, and victimized repeatedly at the Red Roof Inn[s]" and other defendant hotels when she was a minor. *Id.* ¶¶ 4, 7.

Plaintiff's Complaint alleged claims against Red Roof and two other hotel groups, Defendant Wyndham Hotels and Resorts, Inc. ("Wyndham"), and Club No, Inc. ("Club NO") (collectively "the Hotel Defendants"), under the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"). *Id.* ¶¶ 2, 128–142. The TVPRA "prohibits the sex trafficking of children or adults by force, fraud, or coercion." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021); *see also* 18 U.S.C. § 1591(a). In addition to criminal penalties, the TVPRA provides a civil cause of action for sex trafficking victims. 18 U.S.C. § 1595(a). TVPRA's civil remedy provision provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

*Id.*

Plaintiff's claims arise under a "beneficiary theory." [R. 40, p. 10 (citation omitted)]; *see also* [R. 1, ¶ 115].[1] She alleges the hotels "had a statutory obligation not to benefit financially from a venture that [they] knew, or should have known, [engaged] in violations of [sex trafficking]" and "breached this duty by participating in, and facilitating, the harboring and providing of L.H. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and/or commissions." [R. 1, ¶¶ 130, 135, 140]. In a previous Memorandum Opinion and Order, [R. 40], the Court dismissed all claims against Wyndham and dismissed claims of direct liability against Red Roof. *See id.* at 22 (granting Wyndham's Motion to Dismiss, [R. 20], and granting in part and denying in part Red Roof's Motion to Dismiss, [R. 14]). Only claims of vicarious liability remain against Red Roof. *Id.*[2]

Red Roof then filed a Third-Party Complaint against Securitas, a security company hired to provide security services at the Preston Highway location. *See* [R. 67, ¶ 19]. Red Roof's Complaint brings claims for contractual and common law indemnification and defense from Securitas should they be found liable to Plaintiff. *See generally id.*

Currently before the Court are three motions: (1) Securitas's Motion to Dismiss Red Roof's Third-Party complaint for failure to state a claim, [R. 80]; (2) Plaintiff's Motion to Amend in which

---

[1] To the extent the page number listed on a filing differs from the page number assigned by the Court's electronic docketing system, the Court refers to the page number assigned by the docketing system.

[2] The current motions do not implicate the details of Plaintiff's allegations about her trafficking. For a more in-depth discussion of Plaintiff's allegations, *see* [R. 40, pp. 2–7].

she seeks to add claims against Securitas, as well as the franchisee owners in charge of the Preston Highway and Red Roof Inn Place locations, [R. 89]; and (3) Red Roof's Motion for Leave to File a Third-Party Complaint against Imperial, which it asserts was hired to provide security at the Red Roof Inn Place location, [R. 101]. Additional facts relevant to each party's motion will be discussed below.

## II.    SECURITAS'S MOTION TO DISMISS

Red Roof's Third-Party Complaint asserts the following claims against Securitas: "Count I – Contractual Indemnification and Defense," [R. 67, ¶¶ 25–31], and " Count II – Common Law Indemnification," *id.* ¶¶ 32–37. Securitas has moved to dismiss both claims for failure to state a claim. [R. 80]; [R. 80-1 (Memorandum in Support of Securitas's Motion to Dismiss)]. For the following reasons, the Court will deny the motion.

### A.    Legal Standard for a Motion to Dismiss

Rule 12 of the Federal Rules of Civil Procedure provides grounds upon which a defendant may move to dismiss a claim. Relevant here is Rule 12(b)(6). *See* [R. 80-1, p. 4]. Under Rule 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief may be granted."

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint

[4]

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [the plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [the plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

"[A]s a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss." *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997)). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## B.    Analysis of Securitas's Motion

Red Roof's Third-Party Complaint seeks indemnification from Securitas should it be found liable to Plaintiff. *See generally* [R. 67]. Count I, the contractual indemnification and defense claim, is based on the Security Services Agreement ("the Agreement") outlining Securitas's

obligations to the Preston Highway location. *See id.* ¶¶ 25–31 (citing [R. 67-1 (the Agreement)]).[3] Because Red Roof attached the Agreement to the Third-Party Complaint, [R. 67-1], and "incorporated by reference, as if fully re-stated [there]in," the Plaintiff's complaint against Red Roof, [R. 67, ¶ 11], the Court may consider both in deciding this motion. *See* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Com. Money Ctr.*, 508 F.3d at 335. Count II is a claim for common law indemnification. *See id.* ¶¶ 32–37. Securitas argues both claims should be dismissed for failure to state a claim. *See* [R. 80]. The Court will address each claim in turn.

### 1.    Contractual Indemnification (Count I)

Generally, only parties to the original contract have standing to enforce it. *See, e.g.*, *Louisville Gas & Elec. Co. v. Cont'l Field Sys., Inc.*, 420 F. Supp. 2d 764, 770 (W.D. Ky. 2005). However, a third-party beneficiary, sometimes called an intended beneficiary, "is an exception to the general rule" which "comes about when the contracting parties *intend* by their agreement to benefit some person or entity not otherwise a party." *Ping v. Beverly*, 376 S.W.3d 581, 595 (Ky. 2012) (emphasis added). According to the Restatement (Second) of Contracts,

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an *intended* beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> > (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> >
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An *incidental* beneficiary is a beneficiary who is not an intended beneficiary.

---

[3] The Agreement is also attached to Securitas's Motion to Dismiss, [R. 80-2]. For consistency, the Court refers to the copy attached to Red Roof's Third-Party Complaint, [R. 67-1], and has updated citations accordingly.

Restatement (Second) Contracts § 302 (Am. L. Inst. 1981, Oct. 2024 Update) (emphasis added). An intended third-party beneficiary "'may enforce a promise made for his benefit even though he is a stranger both to the contract and to the consideration.'" *Prime Finish, LLC v. Cameo, LLC*, 487 F. App'x 956, 960 (6th Cir. 2012) (quoting *Simpson v. JOC Coal, Inc.*, 677 S.W.2d 305, 308 (Ky. 1984)).

In the present case, Securitas argues that Red Roof cannot state a claim for contractual indemnification because it is neither a party to nor third-party beneficiary of the Agreement. *See* [R. 80-1, p. 5]. The Agreement lists the parties as Securitas and "RRI Opco LLC for [the Preston Highway location]." [R. 67-1, p. 2]. According to Securitas, the Preston Highway location is the "local franchisee" of Defendant Red Roof. [R. 80-1, p. 5]. Red Roof Inn, Inc., however, is not named. As such, Securitas argues, the contractual indemnity claim, "fails because [Red Roof] is not a party to the Agreement," is not "named in the agreement at any point," and "is not an intended beneficiary of the Agreement." *Id.* Red Roof concedes it "is not a party to the agreement," but states that "the language of [the Agreement] unambiguously makes [Red Roof] a third-party beneficiary of the Agreement." [R. 84, pp. 2–3].

Before considering these arguments, the Court must determine which states' law to apply in interpreting the Agreement and evaluating the merits of Red Roof's claim to be a third-party beneficiary. The Agreement contains a "Choice of Law" clause, stating that it "shall be constructed in accordance with and governed by the laws of the State of Ohio." [R. 67-1, § 16]. Both parties, relying on this clause, used Ohio law in briefing their arguments. *See* [R. 80-1, p. 3 n.6 and accompanying text (citing the Choice of Law clause)]; [R. 84, p. 3 n.1 (same)]. They do not dispute that Ohio law applies. However, because the Court has supplemental jurisdiction over the dispute under 28 U.S.C. § 1367(a), the Court must apply Kentucky choice-of-law rules in determining

[7]

whether to honor the Choice of Law clause. *See Osborn v. Griffin*, 865 F.3d 417, 443 (6th Cir. 2017) ("Federal courts exercising supplemental jurisdiction must apply the forum state's choice of law rules to select the applicable state substantive law." (citations omitted)). As the Sixth Circuit has "noted on numerous occasions, Kentucky courts have an extremely strong and highly unusual preference for applying Kentucky law even in situations where most states would decline to apply their own laws." *Id.* (citations omitted). And "Kentucky courts will not automatically honor a choice-of-law provision, to the exclusion of all other considerations." *Id.* (internal quotation marks omitted) (quoting *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 393 (6th Cir. 2000)). However, "[t]he choice-of-law analysis matters only if a conflict exists between the laws of the two states at issue, however. If not, the same rule of decision will apply regardless of which state's law supplies that rule." *Eakes v. Caudill*, 655 F. Supp. 3d 616, 620 (W.D. Ky. 2023) (internal citations omitted).

Ohio courts have expressly adopted the approach of § 302 of the Restatement (Second) of Contracts for defining a third-party beneficiary. *Huff v. FirstEnergy Corp.*, 957 N.E.2d 3, 6–7 (Ohio 2011). Thus, to determine whether someone is an intended third-party beneficiary, Ohio courts use the "intent to benefit" test, which instructs that "if the promisee . . . intends that a third party should benefit from the contract, then that third party is an 'intended beneficiary' who has enforceable rights under the contract." *Id.* (citations omitted).

While "Kentucky courts have not specifically adopted the Restatement (Second) of Contracts concerning intended and incidental beneficiaries," this Court has previously found that "the Restatement provides a logical starting point for the discussion since Kentucky courts have relied on other sections of the Restatement dealing with third-party beneficiaries." *Louisville Gas & Elec.*, 420 F. Supp. 2d at 770 (collecting cases); *see also Peacock v. Damon Corp.*, 458 F. Supp. 2d 411, 416 (W.D. Ky. 2006) ("The Restatement (Second) of Contracts has also long been relied

[8]

upon by Kentucky courts when addressing third-party beneficiary issues" (citations omitted)); *Young v. Kenneth Jackson Elec., Inc.*, No. 2005-CA-001242-MR, 2006 WL 2787077, at *3 (Ky. Ct. App. Sept. 29, 2006) (citing to, but not expressly adopting, § 302). Indeed, Kentucky's third-party beneficiary law requires a similar showing of the parties' intent: in Kentucky, "a third party may enforce a contract made for its 'actual and direct' benefit," and "'the central issue to determining whether the contract is intended to benefit a third party is the relevant intent of the promisee who purchases the promise from the promisor.'" *Louisville Gas & Elec.*, 420 F. Supp. 2d at 770 (first quoting *Sexton v. Taylor Cnty.*, 692 S.W.2d 808, 810 (Ky. Ct. App. 1985); then quoting *United States v. Wood*, 877 F.2d 453, 457 (6th Cir. 1989)).

Because Ohio and Kentucky employ essentially identical tests of the parties' intent for determining third-party beneficiaries, it is unnecessary for the Court to conduct a choice-of-law analysis. *See Eakes*, 655 F. Supp. 3d at 621 (determining Kentucky and Texas employed "similar" rules on the relevant issue and declining to engage in a full choice-of-law analysis). "When the applicable states' laws are not in conflict and application of either would render similar results, federal courts apply Kentucky law." *Brass Reminders Co. v. RT Eng'g Corp.*, 462 F. Supp. 3d 707, 716 (E.D. Ky. 2020), *aff'd*, 844 F. App'x 813 (6th Cir. 2021) (citing *Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 667 (E.D. Ky. 2010)).

Regardless, Kentucky applies the "'most significant contacts' test" to contract disputes, *Asher*, 737 F. Supp. 2d at 668, and the allegations giving rise to L.H.'s Complaint and Red Roof's Third-Party Complaint took place in Kentucky, the Preston Highway location is in Kentucky, and Securitas is a Kentucky-based corporation. *See generally* [R. 1]; [R. 67]; *cf. Eakes*, 655 F. Supp. 3d at 621 (noting that, even if it were to consider certain arguments, the Court would apply Kentucky law when there were "significant contacts with Kentucky," including that the defendant

[9]

was a citizen of Kentucky, the plaintiff worked in Kentucky, the facts underlying the lawsuit occurred in Kentucky, and "[g]iven the strong preference for applying Kentucky law" (internal citation and quotation marks omitted)). Other than the Choice of Law clause and the fact that Red Roof's corporate headquarters are located in Ohio, there does not appear to be any connection with that state. *See generally* [R. 67-1, § 16 (Choice of Law)]; [R. 84, p. 5 (noting that Red Roof's corporate headquarters is located in Columbus, Ohio)].[4] And as already noted, "Kentucky's most-substantial-relationship test trumps even an otherwise-valid choice of law clause when the dispute is centered in Kentucky." *Osborn*, 865 F.3d at 444 (citation omitted). The Court will thus apply Kentucky law, the law of the forum jurisdiction, which appears to have the most significant relationship to this case, in evaluating Red Roof's alleged status as a third-party beneficiary under the Agreement.

As explained, in Kentucky, a third-party beneficiary may enforce a contract if the contracting parties so intended. *See Louisville Gas & Elec.*, 420 F. Supp. 2d at 770. Incidental beneficiaries—those who benefit from the performance of the contract "even though the promisor carries out his obligations not for the specific and direct benefit of the third party"—do not have standing to enforce a contract. *Id.* at 771; *id.* at 770 (quoting Rest. 2d. Contracts § 302(2) ("An incidental beneficiary is a beneficiary who is not an intended beneficiary"). Therefore, "'the central issue to determining whether the contract is intended to benefit a third party is the relevant intent of the promisee who purchases the promise from the promisor.'" *Id.* (quoting *Wood*, 877 F.2d at 457). "In short, all that is necessary is that there be consideration for the agreement flowing to the promisor and that the promisee intends to extract a promise directly benefiting the third party."

---

[4] The Court notes that the Third-Party Complaint states that Red Roof's headquarters is in the nearby city of New Albany, Ohio. [R. 67, ¶ 1]; *see also* [R. 1,¶ 11 (same)]. However, Securitas does not dispute the assertion made in Red Roof's Response that Red Roof's headquarters is in Columbus. *See* [R. 85].

*See United Parcel Serv. Co. v. DNJ Logistic Grp., Inc.*, No. 3:16-CV-00609-GNS-DW, 2017 WL 3097531, at *4 (W.D. Ky. July 20, 2017) (internal quotation marks omitted) (quoting *Simpson*, 677 S.W.2d at 309).

On the face of the Agreement, as the parties agree, Red Roof is not a party to the Agreement. *See* [R. 67-1]; [R. 80-1, p. 5]; [R. 84, p. 2–3 (arguing it is an intended beneficiary of the contract but not a party)]. Rather, the "Agreement [was] made and entered into . . . by and between Securitas Security Services USA, Inc. hereinafter referred to as 'Contractor' and RRI Opco LLC for [the Preston Highway location] hereinafter referred to as 'Customer.'" [R. 67-1, p. 2 (formatting changed)]. Securitas, moreover, argues there is no "additional language in the Agreement addressing the applicability of any provision to third parties including indemnification." [R. 80-1, p. 5]. The parties point to the following provisions of the Agreement as relevant to Red Roof's claim for indemnification:

> § 3 . . . [Securitas] shall furnish to [RRI Opco LLC] a mobile patrol and a security guard . . . to limit the risks of hazards to the personal safety and property of [RRI Opco LLC's] guests, employees, and invitees, and to the employees of [Securitas]. . . .
>
> § 11.1. Subject to the limitations in Sections 11.2 and 11.6[5] hereof, [Securitas] assumes full responsibility and liability for any injury to any person, including [RRI Opco LLC] and its employees or agents . . . resulting from or arising out of any act or omission on the part of [Securitas], its employees or agents in connection with [Securitas's] performance under this Agreement . . .
>
> § 11.2 [Securitas] shall defend . . . protect, indemnify, and hold [RRI Opco LLC] harmless from and against any liability, loss, cost, threat, suit, demand, claim, and expense . . . for damages to property or person which  may arise out of or in connection with this Agreement, . . . but only to the extent that any such Claim is caused by the negligent acts, negligent omissions, willful misconduct, or other fault . . . of [Securitas], its employees or agents while acting within the scope of their duties and authority in connection with its or their performance under this Agreement . . .
>
> § 12 . . . [Securitas], its employees and agents hereby waive [RRI Opco LLC], its directors, officers, partners, employees, and agents from any and all claims,

---

[5] Section 11.6 describes Securitas's obligations to maintain insurance with certain policy limits. *See* [R. 67-1, § 11.6].

demands, causes of action for injury to property or person (including death) arising out of or in connection with [Securitas's] performance under this Agreement, . . . whether or not caused or contributed to by the negligence of [RPI Opco LLC], its employees, or agents. . . .

[R. 67-1, §§ 3, 11.1–2, 12]; *see also* [R. 84, p. 4 (referring to §§ 3, 11.1, 12)]; [R. 85, pp. 2–3 (referring to §§ 3, 11.1, 11.2, 12)].

Red Roof asserts, as it stated in its complaint, that it is an agent of RRI Opco LLC because it "employed the employees at [the Preston Highway Location]." [R. 84, p. 2 (citing [R. 67, ¶¶ 24, 27–28])]. As such, it argues, "[t]he four corners of the [Agreement] make clear that [Red Roof], as an agent of RRI Opco LLC, is an intended beneficiary" because the "Agreement contemplates and sufficiently identifies RRI Opco LLC's employees and agents as intended beneficiaries throughout different sections of the agreement." *Id.* at 4. Further, it points out that the Agreement specifically mentions Red Roof in the Notice provision, which requires a copy of any notices to be sent to "Red Roof Inn . . . Attention: Legal Department" at Red Roof's Corporate Headquarters in Columbus, Ohio. *Id.* at 5 (quoting [R. 67-1, § 14]). Moreover, the Court notes that the Agreement requires Securitas's proof of insurance to be sent to the same address. *See* [R. 67-1, § 11.6].

In its Reply, Securitas asserts that '[t]he indemnification provision does not identify or contemplate [Red Roof], [Red Roof] employees, or any other person," [R. 85, p. 2], and argues that Red Roof "has not, because it cannot, plead facts sufficient to establish an agency relationship with RRI Opco LLC." *Id.* at 3. It further asserts that, "even if [Red Roof's] employees . . . have certain rights under unrelated sections of the Agreement and [Red Roof] was an agent of [RRI Opco LLC], . . . the parties never intended to make [Red Roof] an intended beneficiary to the indemnity clause." *Id.* at 4. As to the Notice clause mentioning "Red Roof Inn" and its corporate headquarters, Securitas argues that "'Red Roof Inn' is not the name of the defendant in this case"

[12]

and "even if properly named, receiving a copy of any notice does not make [Red Roof] an intended beneficiary." *Id.*

In considering these arguments, the Court is cognizant that this matter is before it on a motion to dismiss. *Cf. DNJ Logistic*, 2017 WL 3097531, at *4–6 (assessing a third-party beneficiary claim on a motion to dismiss and emphasizing the posture throughout). As explained, the Court cannot consider matters outside the pleadings, and it must construe all facts in the light most favorable to Red Roof. *See Jackson*, 194 F.3d at 745; *Gavitt*, 835 F.3d at 639–40 (explaining that, when ruling on a motion to dismiss, "[t]he complaint is viewed in the light most favorable to [the plaintiff]; the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [the plaintiff's] favor" (citations omitted)).

In general, the Court "is not confined to the terms of the Agreement" in its analysis because "'Kentucky law directs courts to consider surrounding circumstances in the third-party beneficiary context.'" *See DNJ Logistic*, 2017 WL 3097531, at *5 (quoting *Prime Finish*, 487 F. App'x at 960). Thus, at the motion to dismiss stage, the Court can consider more than the terms of Agreement but must confine its analysis to the allegations and information contained in the pleadings. *See Jackson*, 194 F.3d at 745; *DNJ Logistic*, 2017 WL 3097531, at *6 (relying on not only the agreement at issue, but also the allegations in the complaint). However, courts that have considered this issue at later stages of the proceedings have explained that "extrinsic evidence should not be used to contradict an agreement that unambiguously establishes that a party is *not* a third party beneficiary." *Prime Finish*, 487 F. App'x at 960 (emphasis in original) (citation omitted); *see also Noe v. Bruce*, No. 3:20-CV-00849-RGJ-RSE, 2022 WL 18832096, at *2–4 (W.D. Ky. July 29, 2022), *report and recommendation adopted*, No. 3:20-CV-849-RGJ-RSE, 2022 WL 18806204 (W.D. Ky. Oct. 11, 2022) (finding the agreement unambiguous in its terms

[13]

regarding third-party beneficiaries and refusing to consider extrinsic evidence which allegedly contradicted an unambiguous term). In other words, if the contract at issue unambiguously establishes that a party is not a third-party beneficiary, the Court should refrain from considering the surrounding circumstances. *See Prime Finish*, 487 F. App'x at 960; *see also DNJ Logistic*, 2017 WL 3097531, at *6 (discussing *Prime Finish* in a motion to dismiss case when finding the agreement at issue "[did] not 'unambiguously establish[]'" a party was "'*not* a third party beneficiary" (emphasis in original) (quoting *Prime Finish*, 487 F. App'x at 960)). But if the contract is unclear on the party's status as a third-party beneficiary, the Court may consider such circumstances. *See Prime Finish*, 487 F. App'x at 960; *DNJ Logistic*, 2017 WL 3097531, at *6. And, again, at this stage of the proceedings, the Court's review of surrounding circumstances is limited to the pleadings, including documents properly incorporated into the pleadings. *See Jackson*, 194 F.3d at 745; *DNJ Logistic*, 2017 WL 3097531, at *6 (considering "alleged circumstances surrounding the [a]greement that, taken as true, suggest that [the party] was an intended third-party beneficiary."). Accordingly, the Court will first consider whether the Agreement, on its face, unambiguously precludes the possibility of Red Roof as a third-party beneficiary.

First, as previously noted, "Red Roof Inn, Inc." is not expressly named in the Agreement, but "Red Roof Inn" is mentioned in the Notice provision, which includes the address of Defendant Red Roof's corporate headquarters in Columbus, Ohio. [R. 67-1, § 14]; *see also* [R. 84, p. 5 (noting that the address in the Notice provision is Red Roof's "corporate headquarters")]; [R. 85 (not disputing that the Columbus address is Red Roof's headquarters)]. The parties do not agree, and the pleadings do not clarify, what legal entity was intended by the mention of "Red Roof Inn" in the Notice provision. [R. 67-1, § 14]. However, whether Red Roof was named—correctly or

otherwise—in the Notice provision (or anywhere else in the Agreement) is not outcome determinative. *See Louisville Gas & Elec.*, 420 F. Supp. 2d at 772 ("The Court does not agree that the oral or written agreement must contain specific reference to the third party beneficiary."); *DNJ Logistic*, 2017 WL 3097531 at *5 ("[The] [d]efendants are correct that [the plaintiff] is not named in the Agreement, but that does not preclude [the plaintiff] from being an intended third-party beneficiary." (citations omitted)). Moreover, viewing the facts in the light most favorable to Red Roof—the third-party plaintiff—as the Court must for the purposes of a motion to dismiss, it is at least plausible that the Agreement intended to reference Red Roof by including the address of its corporate headquarters. *See* [R.67-1, §§ 11.6, 14]. Indeed, there is little logic in the argument that "Red Roof Inn" might refer to some other entity, while including the address of Red Roof's corporate headquarters. *See* [R. 85, p. 4 (arguing "'Red Roof Inn' is not the name of the defendant in this case")]. And, in referencing Red Roof, the Notice Provision directs that Red Roof be copied on any notices given under the Agreement. [R. 67-1, § 14]. This would suggest that the parties intended to include Red Roof in their various communications, which supports its argument that it is an intended beneficiary. *See Affiliated FM Ins. Co. v. LNR Partners, LLC*, No. CV 5:21-233-DCR, 2023 WL 1956582, at *5 (E.D. Ky. Feb. 10, 2023) (relying in part on the fact that "[t]he [agreement] list[ed] [the third party's] address as the 'Seller's Notice Address,'" which "suggest[ed] that the parties intended to include [the third party] in all communications regarding their agreement" to find the third party an intended beneficiary).

Moreover, the Agreement contemplates other parties beyond Securitas and RRI Opco LLC by its plain terms, including RRI Opco LLC's "guests, employees, and invitees," [R. 67-1, § 3], RRI Opco LLC's "employees or agents," *id.* § 11.1, Securitas's "employees and agents," *id.* § 12, and RRI Opco LLC's "directors, officers, partners, employees, and agents," *id.* In *DNJ Logistic*,

the court found that "reference[s] to 'affiliates' in some sections [of the Agreement] but not others [was] far from an unambiguous disclaimer of third-party beneficiary claims." 2017 WL 3097531, at *6. On the other hand, courts have found that a clause stating, "the contract 'inure[s] to the benefit' of the parties to the deal, makes it crystal clear that [the plaintiff] was not an intended beneficiary of the contract." *Rotary Paper Manifold Co. v. Giraffe, Inc.*, No. 3:07CV-689-H, 2010 WL 2464916, at *3 (W.D. Ky. June 14, 2010). The Agreement in this case contains no such provision and is instead more like the contract discussed in *DNJ Logistic*. *Cf.* 2017 WL 3097531, at *6. As in that case, "[w]hile the Agreement, considered in a vacuum, may not alone establish that [Red Roof] was an intended third-party beneficiary, it does not 'unambiguously establish that [Red Roof] is *not* a third party beneficiary.'" *Id.* (emphasis in original) (cleaned up) (quoting *Prime Finish*, 487 F. App'x at 960).

Because the Agreement's terms do not clearly establish that Red Roof is *not* a third-party beneficiary, the Court may also consider the allegations in the pleadings. *Id.* (considering allegations in the complaint about the third-party's status). As noted above, this matter is before the Court on a Rule 12(b)(6) motion, filed prior to discovery, and the Court's analysis is limited to the pleadings. Without the benefit of discovery, the Court is unable to reference many details typically important to courts analyzing claims about third-party beneficiaries. *See generally* [R. 84, p. 4 (arguing that "discovery will likely reveal that these clauses [in the Agreement] were drafted with [Red Roof's] benefit in mind")]. For example, in *Prime Finish*, a summary judgment case, the Court referenced an affidavit containing details indicating the third party was "prominently involved in the contract negotiations and formation," "was present at many  meetings," "involved in the drafting," "emailed . . . about the contract during negotiations," and that another, related contract "expressly acknowledge[d] [his] role in drafting the [agreement]." 487 F. App'x at 961.

Together this was "not sufficient, on its own, to confer third-party beneficiary status," but, the Court found, "it [did] show that the parties were aware of [the third-party's] role and position in the arrangement." *Id.*

In cases evaluating third-party beneficiary claims under a 12(b)(6) standard which are able to definitively determine whether the party is an intended third-party beneficiary, courts often have the benefit of additional information, as well. *See, e.g.*, *Rotary Paper*, 2010 WL 2464916, at *4 (ruling on a motion to amend the complaint and finding cases "which hold that whether a plaintiff is a third-party beneficiary is a question of fact that generally cannot be resolved in a 12(b)(6) Motion to Dismiss" did not "appl[y]" because the motion "[came] two years after the commencement of the present action" and "[c]ertain facts and documents, including some not typically available to a Court deciding a motion to dismiss, [were] already part of the record"); *Bariteau v. PNC Fin. Servs. Grp., Inc.*, 285 F. App'x 218, 222 (6th Cir. 2008) (considering an affidavit attached to the complaint that discussed the circumstances surrounding the formation of the agreement and finding that "on its own terms, the affidavit confirms that [the third party] was at most an incidental beneficiary of the agreement"). Indeed, courts in other jurisdictions have found that questions about contracting parties' intent are questions of fact. *See, e.g.*, *Bozzio v. EMI Grp. Ltd.*, 811 F.3d 1144, 1153 (9th Cir. 2016) (citation omitted) (finding determination of whether a party forfeited her ability to sue as a third-party beneficiary was "a fact-bound inquiry ill-suited to resolution at the motion to dismiss stage," and noting that "[o]n remand, a record can be developed that will allow consideration of [that party's] claim that she was an intended third-party beneficiary"); *Winston v. Brogan*, 844 F. Supp. 753, 756 (S.D. Fla. 1994) (ruling on a motion for summary judgment and agreeing with the plaintiff's argument that "whether or not he was an intended third party beneficiary of the defendants' professional services is a disputed question of

[17]

fact"). Questions of fact are generally inappropriate for resolution at the 12(b)(6) stage. *See, e.g.*, *See Raytheon Co. v. Ahtna Support & Training Servs., LLC*, No. 3:21-CV-239-RGJ, 2023 WL 5439778, at *4 n.4 (W.D. Ky. Aug. 23, 2023) (stating that a parties' argument was "a question of fact . . . the Court could not resolve on a motion to dismiss"); *B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 643 (W.D. Ky. 2019) (finding, on a motion to dismiss, the parties' arguments involved "questions of fact better reserved for trial or upon a summary judgment motion").

"[A]ll that is necessary" at this stage is that the Court find that Red Roof has plausibly alleged "consideration for the agreement flowing to the promisor and that the promisee intends to extract a promise directly benefiting the third party." *See DNJ Logistic*, 2017 WL 3097531 at *4 (citation and quotation marks omitted). Here, Securitas is the promisor, RRI Opco LLC is the promisee, and Red Roof is the third party. *See id.* According to the Agreement and Red Roof's Third-Party Complaint, RRI Opco LLC provided consideration in the form of payments to Securitas for its services. [R. 67-1, § 10 (Compensation)]; *see generally* [R. 67, ¶¶ 19–24]. The Agreement, when read in conjunction with the Third-Party Complaint, also suggests that the promisee, RRI Opco LLC, extracted the promise of security services for the benefit of both the local hotel (the Preston Highway location) but also the parent brand, Red Roof. *See generally* [R. 67]; [R. 67-1]. For example, the Agreement references RRI Opco LLC's "employees" several times, *see, e.g.*, [R. 67-1, §§ 3, 11.1, 12], and the Third-Party Complaint asserts that Red Roof employed those employees. [R. 67, ¶ 24]. Moreover, as previously stated, the Notice provision, *id.* § 14, and Indemnity and Insurance provision, *id.* § 11, require notices given under the agreement and a certificate of insurance to be delivered to Red Roof's corporate headquarters.

The parties center their arguments on Red Roof's assertion that it "was an agent of RRI Opco LLC," [R. 67, ¶ 28], because it "employed the employees at [the Preston Highway location],"

[18]

*id.* ¶ 24. Based on this assertion, Red Roof argues that the provisions in the Agreement referring to RRI Opco LLC's "agents" are referencing Red Roof and that "employees" of RRI Opco LLC are really employees of Red Roof. *See* [R. 84, p. 4 (citing §§ 3, 11.1, and 12 of the Agreement) ("The above provisions demonstrate that the parties plainly intended the contracts to directly benefit RRI Opco LLC's agents (*i.e.*, [Red Roof]) and employees (who are employed by Red Roof []).")]. Securitas argues that "[e]ven taken as true, the Agreement does not include agents of RRI Opco LLC as parties or beneficiaries," [R. 80-1, p. 9], and that Red Roof "has not, because it cannot, plead facts sufficient to establish an agency relationship with RRI Opco LLC." [R. 85, p. 3].

In Kentucky, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Reed v. Gulf Coast Enters.*, No. 3:15-cv-295-JHM, 2016 WL 79998, at *11 (W.D. Ky. Jan. 6, 2016) (internal quotation marks omitted) (quoting Restatement (Third) Of Agency § 1.01 (Am. Law Inst. 2006)). On a motion to dismiss, a Plaintiff must "plead 'factual content that allows the court to draw the reasonable inference' that an agency relationship existed." *Reeves v. Quickway Transportation, Inc.*, No. 3:18-CV-733-DJH-LLK, 2021 WL 6882412, at *3 (W.D. Ky. May 28, 2021) (quoting *Ashcroft*, 556 U.S. at 678) (citing *Reed*, 2016 WL 79998, at *11).

The Third-Party Complaint alleges that Red Roof "employed the employees" at the Preston Highway Location, [R. 67, ¶ 24]. Plaintiff's Complaint, which Red Roof incorporated into its Third-Party Complaint, *id.* ¶ 11, asserts that Red Roof "set[] employee wages," "[made] employment decisions," "advertis[ed] for employment," and "standardized training methods for employees" at its franchisee hotels, including the Preston Highway location. [R. 1, ¶ 54(f)(iii)–(v),

[19]

(vii)]. At this stage, taking the allegations in the Complaint and Third-Party Complaint as true and viewing the facts in favor of Red Roof, the Court finds that Red Roof has plausibly alleged that it is an agent of RRI Opco LLC as a result of its employment of the employees at the Preston Highway location. *See also* [R. 40, pp. 14–15 (finding an agency relationship between Red Roof and its franchisee locations sufficient to survive a motion to dismiss claims based on vicarious liability)].[6]

The Agreement mentions the "employees" and "agents" of "RRI Opco LLC for [the Preston Highway location]" several times. *See, e.g.*, [R. 67-1, p. 1 (WHEREAS paragraph) ("[RRI Opco LLC] desires to use the services of [Securitas] to limit the risk of hazards to . . . [RRI Opco LLC's] employees . . .")]; *id.* § 3 (noting that Securitas would provide services "to limit the risks of hazards to the personal safety and property of [RRI Opco LLC's] . . . employees . . ."); *id.* § 11.1 (assuming "full responsibility and liability for any injury to any person, including [RRI Opco LLC] and its employees or agents"); *id.* § 12 (discussing RRI Opco LLC's "employees, and agents"). In addition to these allegations and the aforementioned references to "Red Roof Inn" in the Notice provision, [R. 67-1, § 14], the Agreement references several other third parties such as "guests . . . and invitees," *id.* § 3, and RRI Opco LLC's "directors, officers, [and] partners," *id.* § 12. *Cf. DNJ Logistic*, 2017 WL 3097531, at *6 ("[R]eference[s] to 'affiliates' in some sections [of the Agreement] but not others [was] far from an unambiguous disclaimer of third-party beneficiary claims.").

---

[6] The Court based this conclusion on the facts from Plaintiff's Complaint alleging Red Roof's "control over how [its] local hotels conduct[ed] daily business through various actions, including by setting employee wages, fixing profits, and making employment decisions." [R. 40, p. 15 (internal quotation marks omitted) (quoting (citing [R. 1, ¶54])]. The Court also noted that "the Complaint contains multiple allegations regarding [Plaintiff's] agency theory, including that franchisor hotels provide their local hotels with brand recognition, marketing organization, listing in travel agency databases, an 800 number, revenue management tools, world-class loyalty programs, and a website . . .." *id.* (citing [R. 1, ¶¶ 11–12, 48, 54]).

On this record, given the terms of the Agreement and the allegations in the Third-Party Complaint, viewed in the light most favorable to Red Roof, the Court cannot say that Red Roof is *not* a third-party intended beneficiary to the Agreement. It is at least plausible Red Roof could prove it was an intended beneficiary to the Agreement. In other words, Red Roof has alleged sufficient facts, taken as true for the purposes of the Motion to Dismiss, for the Court to that there is consideration flowing to Securitas and that RRI Opco LLC intended to extract a promise from Securitas directly benefitting Red Roof. *See DJN Logistic*, 2017 WL 3097531, *6. The Court therefore finds that the Third-Party Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). As such, the Court will deny Securitas's motion on this ground.

### 2.     Common Law Indemnification (Count II)

Securitas also argues the common-law indemnification claim, Count II, should be dismissed. *See generally* [R. 80-1]. It is not clear from the Third-Party Complaint whether Red Roof's claims arise under state or federal common law. *See generally* [R. 67]. The parties briefed this issue applying Kentucky law, and did not address the possibility of a federal common law claim. *See generally* [R. 80-1]; [R. 84]; [R. 85]; *see also* [R. 84, p. 6 n.3 ("For purposes of responding to Securitas'[s] Motion, [Red Roof] addresses Securitas'[s] arguments under Kentucky law and notes that Ohio applies a substantially similar standard." (citation omitted))].

To the extent Red Roof seeks common law indemnification under federal common law, case law clearly forecloses such a claim. A district court in this circuit—the Southern District of Ohio—applied federal law and rejected claims for common law indemnification and contribution made by Defendant Red Roof and Red Roof Franchising, LLC, against its franchisees in no fewer than five cases ("the Red Roof cases"). *See A.S. v. Red Roof Inns, Inc.*, No. 2:22-CV-3846, 2024

[21]

WL 5245123, at *1–3 (S.D. Ohio Dec. 30, 2024); *H.S. v. Red Roof Inns, Inc.*, No. 2:22-CV-3778, 2025 WL 18761, at *1–3 (S.D. Ohio Jan. 2, 2025); *G.M. v. Choice Hotels Int'l, Inc*., No. 2:22-CV-3788, 2025 WL 18760, at *1–3 (S.D. Ohio Jan. 2, 2025); *J.B. v. Red Roof Inns, Inc.*, No. 2:22-CV-3776, 2025 WL 50899, at *1–3 (S.D. Ohio Jan. 8, 2025); *N.B. v. Red Roof Inns, Inc.*, No. 2:22-CV-3771, 2025 WL 50876, at *1–3 (S.D. Ohio Jan. 8, 2025).[7] The court first clarified that "hotel defendants were not entitled to bring contribution or indemnification claims against a franchisee under the TVPRA" because there is no right under the statute. *See A.S.*, 2024 WL 5245123, at *2 (first citing *A.W. v. Best W. Int'l, Inc.*, No. 2:21-CV-4934, 2024 WL 1340264 (S.D. Ohio Mar. 29, 2024); then citing *T.P. v. Best W. Int'l, Inc.*, No. 2:21-CV-4933, 2024 WL 1347451 (S.D. Ohio Mar. 29, 2024)). Next, it explained that "[c]laims for common law indemnification . . . are, in effect, claims for contribution," and "rejected [the] hotel defendants' attempts to seek contribution or indemnification under federal common law." *Id.* (internal citations and quotation marks omitted).[8] Because Red Roof cannot bring a claim for federal common law indemnification, the Court will construe its claims only under state law.[9] The Court will apply Kentucky law to this dispute because the parties have briefed the issue using Kentucky law.[10]

---

[7] Each of these cases contains identical language and pagination relating to the issue of common law indemnity with differences only for the cases' record citations. As such, the Court will collectively refer to these cases as "the Red Roof Cases" while citing to the first, *A.S.*, 2024 WL 5245123.

[8] The defendants in that case argued that their "rights and obligations [were] governed by Ohio law," but the court did not address state law claims because prior cases in the district had evaluated common law claims only under federal common law. *See A.S.*, 2024 WL 5245123, at *3 (discussing *A.W.*, 2024 WL 1340264, and *T.P.*, 2024 WL 1347451) (treating the common law indemnification claims under federal law because the defendants "provide[d] no reason why [the] case differ[ed] from *A.W.* and *T.P.* so as to warrant departure from those rulings.").

[9] Although cases, like the Red Roof cases have found that the TVPRA does not itself contain an indemnification right, *see, e.g.*, *A.S.*, 2024 WL 5245123, at *2 (citations omitted), at least one district court has found that "the [TVPRA] does not preempt . . . state-law contribution or indemnification claims." *See Doe 1 v. JPMorgan Chase Bank, N.A.*, 687 F. Supp. 3d 405, 413, 415 (S.D.N.Y. 2023).

[10] Red Roof, in a footnote, appears to contest that its claim was under Kentucky law, rather than Ohio, stating that it addresses the issue under Kentucky law "[f]or the purposes of responding to Securitas'[s] Motion, and notes that Ohio applies a substantially similar standard." [R. 84, p. 6 n.3].

Turning to Kentucky law, the Court first notes, as do the parties, that common law indemnification is an equitable remedy only available if Red Roof's contractual indemnification claim fails. *See Stewart Title Guar. Co. v. Hayden & Butler, P.S.C.*, No. 2009-CA-000878-MR, 2010 WL 3292931, at *3–4 (Ky. Ct. App. Aug. 6, 2010); [R. 80-1, p. 14 (asserting the same under Ohio law)]; [R. 84, p. 6 n.2 ("[Red Roof] recognizes that if the Court holds it to be an intended beneficiary under the Security Services Agreement (it should), then the subject indemnification provision controls.")].[11] However, Red Roof permissibly "pleads common law indemnification in the alternative." *See* [R. 84, p. 6 n.2]; *Devs. Sur. & Indem. Co. v. Renaissance Valley Farms, LLC*, 36 F. Supp. 3d 742, 753 (W.D. Ky. 2014) ("[The defendant] argues that the claim for common law indemnity must fail because it seeks the same relief as [the] [p]laintiffs would be entitled to recover under their claim for contractual indemnity. However, the Federal Rules permit a party to plead claims in the alternative, 'regardless of inconsistency.'" (quoting Fed. R. Civ. P. 8(d))).

In Kentucky, "the right to indemnity is of common law origin and is available to one exposed to liability because of the wrongful act of another with whom he/she is not in pari delicto [in equal fault]." *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000); *see also Greenwell v. Lowe's Home Ctrs., Inc.*, No. 2010-CA-002074-MR, 2012 WL 3046417, at *2 (Ky. Ct. App. July 27, 2012). There are two ways to establish common law indemnity:

> (1) Where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury.

---

[11] The Court notes that it has *not* found that Red Roof is a third-party beneficiary of the Agreement as that question was not before the Court. The Court has only found that Red Roof alleged sufficient facts to show that it *may plausibly* be a third-party beneficiary so as to overcome Securitas's Motion to Dismiss. *See supra* § II(B)(1).

[23]

*Degener*, 27 S.W.3d at 780 (quoting *Louisville Ry. Co. v. Louisville Taxicab & Transfer Co.*, 77 S.W.2d 36, 39 (1934)). Securitas argues the common law claim should be dismissed because "neither of these scenarios [for common law indemnity] exist in this case." [R. 80-1, p. 10]. Red Roof makes no argument that they are an "innocent master," and the Court therefore understands that Red Roof is *not* arguing that it can establish common law indemnity in the first manner laid out in *Degener. See generally Degener*, 27 S.W.3d at 780; [R. 84, pp. 6–8 (arguing only about the apportionment of fault between the parties, never that, should it be found liable to L.H., it would be "innocent")]. As such, the question is whether it is plausible that Securitas could be found to be the "primary and efficient cause of [L.H.'s] injury." *See Degener*, 27 S.W.3d at 780.

First, Red Roof's Third-Party Complaint acknowledges that Securitas only worked at the Preston Highway location, *see, e.g.*, [R. 67, ¶ 10], but seeks indemnification for "any judgment" found in Plaintiff's favor against it and alleges "any resulting damages are the direct and proximate result of the acts or omission of Securitas, its agents, or employees." *Id.* ¶ 37. The Court agrees with Securitas that, should there be a claim for common law indemnity, it could not be for the events at the Red Roof Inn Place location because it is not plausible that Securitas was the primary cause of Plaintiff's injuries there. *See* [R. 80-1, pp. 11–12]. The Court therefore considers the parties' arguments in the context of the Preston Highway location.

To support its argument, Red Roof relies on *Kelly v. Arrick's Bottled Gas Serv., Inc.*, No. CV 14-118-DLB-EBA, 2016 WL 4925787 (E.D. Ky. Sept. 14, 2016), for the proposition that "[t]he Court may consider Securitas['s] knowledge and expertise when weighing degrees of fault." [R. 84, pp. 7–8]. In *Kelly*, the court found that the defendant, a propane gas supplier, "was the party with superior knowledge" of the gas tank which exploded at the plaintiff's rental home. 2016 WL 4925787, at *1, 8. Therefore, the Court found the third-party defendants—the owners of the

[24]

plaintiff's rental—could not be "the 'primary, efficient, and direct cause of the accident'" so "[i]ndemnification [was] not the proper remedy." *Id.* at *8 (quoting *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 223 S.W.2d 165, 167 (1949)). Ultimately, the court found the homeowners and the gas company were in pari delicto and "both abdicated their respective responsibilities to thoroughly inspect the propane system and committed negligence of the same nature" against the renter of the home. *Id.*

Based on *Kelly*, Red Roof argues that, because"Securitas purported to have expertise in security services and the ability to limit the risks of hazards to guests" and "had a duty under the [Agreement] to patrol the premises, provide a safe and secure environment, and ascertain motives of non-guests," "no reasonable jury could find that [Red Roof], as opposed to the security expert, is the party primarily liable to Plaintiff." [R. 84, p. 8]. In both its Third-Party Complaint and Response, Red Roof directs the Court to the terms of the Agreement to outline Securitas's responsibilities to the Preston Highway location and to demonstrate that Securitas would be primarily liable to Plaintiff because it "was in a superior position of knowledge regarding Plaintiff's alleged signs of trafficking." *See id.* at 7–8 (discussing § 3 and Exhibit B of the Agreement); *see also* [R. 67-1, § 3]; *id.* at p. 10 (Ex. B to the Agreement); [R. 67, ¶¶ 19, 22, 23, 33, 36 (citing [R. 67-1, §§ 3, 5, 7, 11–11.2)]. However, aside from generic descriptions in the Agreement that the security guards would be "properly trained," [R. 67-1, § 3], "remain alert and active during the entire shift," *id.* at p. 10 (Ex. B, ¶ 10), and "[c]omplete a full property patrol each hour," *id.* at 11 (Ex. B, ¶ 6), the Court—at this motion to dismiss stage—does not have a full picture of Securitas's alleged knowledge or its ability to intervene to prevent harm to Plaintiff.

Securitas, on the other hand, relies on *Greenwell*, in which the court found that the third-party defendant's failure to properly install a traffic light could not be the active or primary cause

of the injuries the plaintiff sustained when the defendant/third-party plaintiff struck her with his vehicle after running a red light. 2012 WL 3046417, at *1–3; *see* [R. 80-1, p. 10 (relying on *Greenwell*)]. In *Greenwell*, the court found that, "[v]iewing the facts most favorable to [the defendant/third-party plaintiff driver], . . . both [parties] could be considered tortfeasors *in pari delicto*," but "under no scenario of provable facts would [the driver's] purported negligence be degraded to passive thus entitling him to indemnity." 2012 WL 3046417, at *3 (citing *City of Louisville v. Louisville Ry. Co.*, 160 S.W. 771 (Ky. 1913)). Relying on that case, Securitas urges the Court to find that "there is no scenario in which [Red Roof's] purported negligence could be reduced to passive rather than active based on the Plaintiff's claims." [R. 80-1, p. 10].

To support this assertion, Securitas argues its "role at the Preston Highway [l]ocation [was] limited in scope and time." *Id.* at 11. For example, as stated in the Agreement, Securitas only provided security guards from 10:00 p.m. until 5:00 a.m. Thursday–Saturday nights and made twenty-minute "mobile patrol inspections" twice nightly between 10:00 p.m. and 3:00 a.m. on Sunday–Wednesday. [R. 67-1, p. 9 (Ex. A)]. Red Roof does not allege that Securitas bore any responsibility for security outside of its contracted hours at the Preston Highway location, nor did it dispute Securitas's assertions in their motion that "[a]t all other times, Red Roof hotel employees, or their agents or contractors, were presumably responsible for all security-related matters," and "even during the limited times Securitas was at the Preston Highway Location, Red Roof's employees were present and responsible for the general operations of the property." [R. 80-1, p. 12]; *see generally* [R. 85 (failing to dispute this contention)].

In considering these arguments, the Court first notes that both parties rely on cases before the courts on motions for summary judgment. *See Kelly*, 2016 WL 4925787, at *8; *Greenwell*, 2012 WL 3046417, at *1. In considering a motion for summary judgment, a court has the benefit

of a more developed factual record and the ability to evaluate questions of fact. *See Raytheon*, 2023 WL 5439778, at *4–5. In *Raytheon*, where a similar indemnification issue was raised in a motion to dismiss, the court noted the third-party defendant raised several "question[s] of fact . . . the [c]ourt could not resolve on a motion to dismiss." *Id.* at *4 n.4; *see also id.* at *4 n.5 (noting the parties' argument "again, [was] a question of fact"). The court held that the third-party plaintiff had "sufficiently pled that 'both parties have been in fault, but not in the same fault, towards the party injured and the fault of the party from whom indemnity is claimed [] was the primary and efficient cause of the injury.'" *Id.* at 4 (quoting *Degener*, 27 S.W.3d at 780). Further, the court found that "further argument on this issue is *appropriate only at the summary judgment stage*." *Id.* at 5 (emphasis added); *see also id.* at *4 (commenting "[t]his is not a motion for summary judgment" after explaining factual arguments by the parties).

As in *Ford Motor Co. v. Manning Equip., Inc.*, No. CIV.A.3:04CV-722-H, 2005 WL 1862086 (W.D. Ky. Aug. 3, 2005), "[t]he Court does have doubts about whether an indemnity claim can ultimately succeed on the facts of this case." *Id.* at *3. Namely, because Securitas maintained such a limited presence at the Preston Highway location, *see generally* [R. 67-1, p. 9 (Ex. A)], it is difficult to imagine it could be "the primary and efficient cause of the [Plaintiff's] injury." *See Degener*, 27 S.W.3d at 780 (citation omitted). Nonetheless, "all [the] relevant facts are yet to be fully developed and presented," and the Court must consider the allegations in the Third-Party Complaint to be true. *See Ford*, 2005 WL 1862086, at *3. On the current record, Red Roof's Third-Party Complaint "does state the bare elements of an indemnity claim." *Id.* That is, it is at least plausible that it and Securitas "are not equally at fault," and Red Roof's liability may be "secondary" to Securitas's who was tasked, at least some of the time, with security at the Preston Highway location. *See id.* While Securitas's arguments may ultimately be meritorious, "the issue

is not appropriate for resolution until all of the relevant discoverable facts are before the Court." *Id.*; *see also Raytheon*, 2023 WL 5439778, at *5 ("Further argument on this issue is appropriate only at the summary judgment stage."). Finally, to the extent Securitas appears to argue that it would need to be liable under the TVPRA for the common-law indemnification claim to stand, case law is clear that an indemnification claim need not arise from the same cause of action asserted by the initial plaintiff against the defendant/third-party plaintiff. *See Raytheon*, 2023 WL 5439778, at *5 (citations omitted). As such, the Court will deny Securitas's motion to dismiss as to state common law indemnification claims.

### III.    L.H.'S MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiff L.H. filed her Motion for Leave to Amend Complaint on September 6, 2024. [R. 89]. In addition to the original allegations against the Hotel Defendants, the Amended Complaint adds as defendants Securitas, RRI Opco, LLC, the franchisee for the Preston Highway location, and BW RRI I, LLC, the franchisee for the Red Roof Inn Place location. *See generally* [R. 89-2]. The Court will refer to RRI Opco, LLC, and BW RRI I, LLC, collectively as "the Franchisee Defendants." Plaintiff alleges that these newly proposed defendants violated the same provision of the TVPRA as Hotel Defendants by benefiting from her trafficking at the Louisville-area hotels. *See id.* ¶¶ 117–121 (Count One, against all Defendants). For the following reasons, the Court will grant Plaintiff's motion.

#### A.    Legal Standard for Amending Pleadings

Federal Rule of Civil Procedure 15 governs amendments to pleadings and allows a party to amend its pleading once as a matter of course within twenty-one days after serving it. Fed. R. Civ. P. 15(a)(1)(A). Afterwards, a party can only amend its pleading with either the opposing party's written consent or the court's leave. Fed R. Civ. P. 15(a)(2). However, as in this case, when

a party seeks to amend their pleadings after the scheduling order's deadline to do so, they "first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (citations omitted).

Under Rule 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (internal quotation marks omitted) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2011)). "[C]ourts may also consider prejudice to the nonmoving party. But the Court must first find that the moving party proceeded diligently before considering whether the nonmoving party is prejudiced, and only then to ascertain if there are any additional reasons to deny the motion." *Mercer v. Wal-Mart Stores E., L.P.*, No. 4:23-CV-00119-RGJ-HBB, 2024 WL 2806192, at *1 (W.D. Ky. May 31, 2024) (internal citation and quotation marks omitted) (citing *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 479 (6th Cir. 2014)); *see also Carroll v. Young*, No. 1:19-CV-00153-GNS-HBB, 2022 WL 14151977, at *4 (W.D. Ky. Oct. 24, 2022) ("[A] movant who fails to show he acted diligently will not be accorded relief under Rule 16(b)(4) merely because the opposing party will not suffer substantial prejudice as a result of the modification of the scheduling order." (citing *Interstate Packaging Co. v. Century Indem. Co.*, 291 F.R.D. 139, 145 (M.D. Tenn. Jan. 22, 2013))).

The burden of showing good cause rests with the moving party. *See E.E.O.C. v. Taco Bell Corp.*, 575 F. Supp. 2d 884, 889 (W.D. Tenn. 2008). Once the party has shown good cause under Rule 16, the Court can consider the motion to amend under Rule 15(a). *See Kellogg Co. v. FPC Flexible Packaging Corp.*, No. 1:11-CV-272, 2012 WL 769476, at *3 (W.D. Mich. Mar. 7, 2012)

[29]

("Once a plaintiff has shown good cause for amendment of a case management order, a court may then look to the Rule 15(a) standards for amendment of pleadings."); *see also Leary*, 349 F3d at 909.

"Federal Rule of Civil Procedure 15(a) states that leave to amend a pleading shall be freely given 'when justice so requires.'" *Moss v. United States*, 323 F.3d 445, 476 (6th Cir. 2003) (quoting Fed. R. Civ. P. 15(a)). "Denial may be appropriate, however, where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

### B.    Analysis of L.H.'s Motion

Plaintiff seeks to add claims against Securitas and the Franchisee Defendants, alleging they violated 18 U.S.C. § 1595 (the civil remedy provision of the TVPRA) by benefitting from her alleged trafficking in Louisville Red Roof Inn locations. *See generally* [R. 89-2, ¶¶ 117–21]. In her motion, Plaintiff represents that counsel for Red Roof and Club NO consented to her filing an amended complaint. [R. 89, p. 2]. While she has not provided their "written consent" as required by Rule 15(a)(2), they notably have failed to oppose her motion. *See Ruffin v. Equifax Info. Servs., LLC*, No. 19-11114, 2019 WL 4809574, at *1 (E.D. Mich. Oct. 1, 2019) (noting that, although the defendant "did not provide written consent," the plaintiff "indicated that [the] [d]efendant . . . [did] not object to the motion," and the defendant "did not file a response to the motion within the allotted time to do so"); *Marsh v. Fifth Third Bank*, No. 0:22-CV-45-DLB-MAS, 2022 WL 18638746, at *1 (E.D. Ky. Sept. 2, 2022) (noting that, "[a]lthough there [was] no written consent in the record, [the] [d]efendants did not file a response to the motion"); *see also* LR 7.1(c) ("Failure

[30]

to timely respond to a motion may be grounds for granting the motion."). The Court therefore understands that Red Roof and Club NO have no objection to the requested amendment.

At one point, Plaintiff also states that "[c]ounsel for the [F]ranchise[] Defendants has consented for their addition to the case," [R. 89, p. 4], but in other places suggests that it was counsel for *Red Roof* that consented to the Franchisee Defendants' addition, and Plaintiff offers nothing to suggest the parties would share counsel. *Id.* (stating, "most significantly, counsel for [Red Roof] has consented to their addition," when discussing the claims against the Franchisee Defendants). Therefore, given the lack of written consent and clarity as to Red Roof's ability to consent on the Franchisee Defendants' behalf, the Court finds that Plaintiff must have leave of the Court to amend her Complaint to add claims against the Franchisee Defendants. *See* Fed R. Civ. P. 15(a)(2) (permitting amendment after twenty-one days after service only by written consent of the parties or leave of court).

Moreover, Securitas filed a Response objecting to the motion. [R. 90]; *see also* [R. 93 (Plaintiff's Reply)]. The Court will first evaluate Plaintiff's addition of claims against Securitas, before turning to her amendment concerning the Franchisee Defendants.

### 1.        Claims Against Securitas

Plaintiff's Amended Complaint seeks to add a claim against Securitas, a third-party defendant, for violations of the TVPRA, specifically alleging that it benefitted from her illegal trafficking in violation of 18 U.S.C. § 1595. *See* [R. 89-2, ¶¶ 119–20]. In general, "[t]he plaintiff may assert against the third-party defendant any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a)(3). Securitas concedes that Plaintiff's allegations against it are part of the same transaction or occurrence as her underlying Complaint against the Hotel Defendants. *See* [R. 90, p. 5].

However, Securitas opposes the motion because it argues Plaintiff's motion is untimely and she has failed to demonstrate good cause for filing this motion after the Scheduling Order's deadline for filing motions to amend the pleadings or add parties. *See generally id.*; [R. 48 (Scheduling Order)]. The Scheduling Order set the deadline for motions to join additional parties or amend pleadings as March 15, 2024. [R. 48, p. 1].[12] Plaintiff's motion was not filed until September 6, 2024, nearly six months later. *See* [R. 89]. As explained, a scheduling order "may be modified only for good cause and with the judge's consent," Fed. R. Civ. P. 16(b)(4), and the Court must first determine whether a party had good cause for their delay before addressing the propriety of the amendment under Rule 15(a). *See Leary*, 349 F.3d at 909. To do so, the Court focuses predominately on the moving party's diligence and also considers prejudice to the other party and other relevant considerations. *See Inge*, 281 F.3d at 625; *Carroll*, 2022 WL 14151977, at *4 (citing *Smith*, 595 F. App'x at 479) (instructing that courts must first consider diligence, then prejudice, then "any additional reasons").

Plaintiff's initial motion fails to address Rule 16's good cause standard at all. *See generally* [R. 89]. Instead, Plaintiff bases her arguments exclusively on judicial economy and what she argues to be a lack of prejudice to any defendant. *See id.* at 3; *see also* [R. 90, p. 6 (asserting that Plaintiff "attempts to sidestep meeting the 'good cause' requirement by arguing that the amended complaint would not prejudice other parties and would be in the best interest of judicial economy.")]. In her Reply, Plaintiff seems to acknowledge that she "'could have acted with more diligence,'" [R. 93, p. 4 (quoting *Diamond Transp. Logistics Inc. v. Kroger Co.*, 2020 WL

---

[12] The Court has since extended the fact discovery deadline until December 1, 2025. [R. 104, p. 1]. "Given the pending Motions on the pleadings, the Parties [also] request[ed] the Court schedule a status conference . . . to establish dates for expert discovery and dispositive motion[s]." *Id.* The requested status conference is currently set for April 1, 2025. *See* [R. 109].

7253304, at *2 (S.D. Ohio Dec. 10, 2020))], but, she argues, her "delay of less than five months [from the time Securitas was added as a third-party defendant] to file the instant motion should not outweigh the policy considerations [of judicial economy] under Rule 14, especially given that none of the discovery or expert disclosure deadlines in this case have been extended to date, nor have they expired yet."[13] *Id.*

Plaintiff further argues it would have been impossible for her to meet the March 15, 2024, deadline because Red Roof did not seek leave to file its Third-Party Complaint against Securitas until March 14, 2024. *Id.* She asserts she did not learn of Red Roof's Agreement with Securitas until Red Roof filed its motion. *Id.* Securitas, however, asserts Plaintiff must have failed to review Red Roof's initial disclosures and "certainly failed to conduct any discovery regarding potential parties prior to the amendment deadline." [R. 90, p. 4]. Regardless, Plaintiff offers no explanation for the nearly six months between the filing of Red Roof's motion and her own motion. *See id.*; *see also* [R. 93].

*Diamond Transportation*, 2020 WL 7253304, and *Kellogg*, 2012 WL 769476, are instructive. In *Diamond Transportation*, a defendant sought leave to file a crossclaim and third-party complaint almost three months after the scheduling order's deadline to add parties or amend the pleadings. 2020 WL 7253304, at *1. The court agreed that the co-defendant's filing of a counterclaim five days before the deadline "constitute[d] good cause to extend the deadline by some amount," but "it [was] less clear that the new information . . . justifie[d] an extension of 83 days." *Id.* at *2. Nonetheless, and although the defendant "certainly could have acted with more diligence," the court granted the defendant's motion. *Id.* Here, too, the new information received

---

[13] As noted, after Plaintiff filed her motion, the fact discovery deadline was extended and the parties plan to meet after the resolution of these motions to determine deadlines for expert discovery and dispositive motions. *See* [R. 104, p. 1]; [R. 109 (setting status conference for April 1, 2025)].

by Plaintiff on March 14, 2024, likely justified granting an extension, though it is not clear that five months were necessary, and she "could have acted with more diligence." *See id.*

Similarly, in *Kellogg*, the court found that the "plaintiff treat[ed] the good-cause standard of Rule 16(b) too lightly," but credited the plaintiff's assertion that "it was unaware of the specific contractual relationship between [the] defendant and [the proposed additional defendant]" that gave rise to her amended complaint. 2012 WL 769476, at *3. "In the circumstances of [a] complex commercial case," the court could "not say that [the] plaintiff [was] guilty of a lack of diligence." *Id.* This instant case before the Court is also complex and multi-faceted, involving various entities, and, "[i]n a case of this complexity, it is understandable that some discovery might be necessary in order for the parties to appreciate fully the scope of claims and defenses," and indeed, to fully understand the relationships among the various entities. *See id.* Although "[d]iligence poses a close[] question," the Court will find that Plaintiff acted diligently enough to justify extending the scheduling Order's deadline. *See Diamond Transp.*, 2020 WL 7253304, at *2.

Having found Plaintiff diligent, the Court must also evaluate any potential prejudice to Securitas or the other parties. *See, e.g.*, *Leary*, 349 F.3d at 906 ("Another important consideration for a district court deciding whether Rule 16's 'good cause' standard is met is whether the opposing party will suffer prejudice by virtue of the amendment." (citing *Inge*, 281 F.3d at 625)). Apparently not anticipating the Court would find that Plaintiff acted diligently, Securitas does not address any potential prejudice to itself—it merely argues that her "arguments as to prejudice do not overcome [her perceived failure to act diligently]." *See* [R. 90, p. 7]. Regardless, the Court does not discern any prejudice to Securitas. As in *Diamond Transportation*, there is little risk of prejudice when "the new claims . . . overlap considerably with claims already asserted in the case by other parties," namely Red Roof's Third-Party Complaint against Securitas and Plaintiff's initial Complaint

[34]

against the Hotel Defendants, so little or no additional discovery will be required. *See* 2020 WL 7253304, at *2. Additionally, the deadline for fact discovery has been extended to December 1, 2025, and the parties have agreed to evaluate and set other deadlines with the Court after the disposition of the pending motions. *See* [R. 104, p. 1]; *cf. Diamond Transp.*, 2020 WL 7253304, at *2 (noting that the discovery period had not closed and "no party suggest[ed] that allowing [the] pleading amendment would require extending other case deadlines"). The Court is thus "unable to discern any prejudice to any party that would be caused by permitting the amendment." *Diamond Transp.*, 2020 WL 7253304, at *2.

Because Plaintiff acted diligently and Securitas will not be prejudiced by extending the Scheduling Order and permitting Plaintiff's amendment, the Court will now "ascertain if there are any additional reasons" to deny or grant the motion. *See Carroll*, 2022 WL 14151977, at *4 (citing *Smith*, 595 F. App'x at 479). The Court finds Plaintiff's arguments on judicial economy further justify granting her motion. *See, e.g.*, [R. 93, p. 4 (noting "the policy considerations under Rule 14")]. Courts within this circuit have emphasized that "[t]he policy underlying Rule 14 is to promote judicial efficiency," and "'economies of time and expense can be achieved by combining suits into one action.'" *Kellogg*, 2012 WL 769476, at *2 (quoting 6 Charles Alan Wright, et al., *Federal Practice & Procedure: Civil* § 1442 at 339–40 (2010)) (discussing Fed. R. Civ. P. 14); *see generally* [R. 89]; [R. 93]; *see also A.S.*, 2024 WL 5245123, at *1. (noting "Rule 14's purpose of encouraging judicial economy").

Once again, *Diamond Transportation* is particularly helpful. *See* 2020 WL 7253304, at *2. There, the court reasoned that "if the Court were to deny leave for [the defendant] to assert its new claims in [the present] action, [it] would likely file a separate action . . . [which] would be related to the present case and, in all likelihood, would end up consolidated with [that] one." *Id.* Therefore,

to avoid "requiring multiple procedural steps" in effectuating the same result and because of a "complete lack of prejudice to any party that would result from allowing the amendment," the court found good cause under Rule 16(b)(4). *Id.*

As in *Diamond Transportation*, the Court recognizes that if it were to deny her motion, Plaintiff could simply file another action asserting these claims which would likely be combined with the instant case, ultimately leading to the same outcome with more procedural complications. *See id.* In her motion, Plaintiff herself asserts that she "could timely file suit against Securitas separately, so her assertions of claims against Securitas in the instant action would be in the interest of judicial efficiency." [R. 89, p. 3]. The Court acknowledges Securitas's argument that "judicial efficiency would best be served if all parties adhered to the agreed upon deadlines set out in the Court's Scheduling Order." [R. 90, p. 7]. However, as Plaintiff argues, "it makes little sense to disallow third-party claims when they can simply be brought by a separate action which would then be subject to consolidation with the first action anyway." [R. 93, p. 4 (citing *Diamond Transp.*, 2020 WL 7253304, at *2)]. In describing the potential of several lawsuits involving the same underlying action, the *Diamond Transportation* court was clear "[t]he principle of judicial economy disfavors [that] course of action." 2020 WL 7253304, at *2.

For the foregoing reasons, the Court will find that Plaintiff has satisfied Rule 16's "good cause" standard. *See* Fed. R. Civ. P. 16(b)(4). It must now briefly analyze her motion under Rule 15. *See Kellogg*, 2012 WL 769746 at *3 ("Once a plaintiff has shown good cause for amendment of a case management order, a court may then look to the Rule 15(a) standards for amendment of pleadings.").

Rule 15's "liberal amendment mandate" grants that "leave to amend 'shall be freely given when justice so requires.'" *Leary*, 349 F.3d at 905–06 (quoting Fed. R. Civ. P. 15(a)). Courts must

evaluate whether there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* at 905 (internal quotation marks omitted) (quoting *Foman*, 371 U.S. at 182)). Securitas did not discuss Plaintiff's motion under the standards of Rule 15. *See generally* [R. 90]. To the extent its arguments about Plaintiff's diligence apply to delay, "delay alone is not a sufficient reason for denying leave to amend." *Kellogg*, 2012 WL 769476, at *3 (citation omitted). For delay to be a sufficient reason, it "must result in prejudice to the opposing party that cannot reasonably be avoided by measures short of denial of the motion." *See id.* (citation omitted). As the Court previously found—and Securitas does not dispute in its Response—Plaintiff's amendment would not result in prejudice to any party, and for similar reasons, it does not "'plac[e] an unwarranted burden on the court.'" *Morse*, 290 F.3d at 800 (quoting *Adams v. Gould*, 739 F.2d 858, 863 (3d Cir. 1984)). Moreover, Securitas has not alleged bad faith or dilatory motive, and Plaintiff has not previously attempted to amend her complaint.

Finally, Securitas argues—in a single-sentence footnote—that "[a]ny claim against [it] would be futile as it received an agreed upon fee pursuant to the Security Agreement making it impossible for it to have benefitted financially from the alleged trafficking of Plaintiff." [R. 90, p. 7 n.24 (citations omitted)]. As an initial matter, such an undeveloped argument need not be considered by the Court. *See Members Heritage Credit Union v. N.Y. Marine & Gen. Ins. Co.*, 5:21-CV-207, 2023 WL 4876383, at *13 (E.D. Ky. July 31, 2023) (explaining that the party's argument was "wholly undeveloped, and the Court need not consider it" (citation omitted)); *Brown v. Astrue*, No. 09-387, 2010 WL 4878866, at *3 (E.D. Ky. Nov. 24, 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997))).

In any case, although courts *may* deny a motion to amend or supplement on futility grounds, "many courts, for reasons of practicality, decline to engage in a futility analysis at the motion to amend phase and opt instead to assess questions of plausibility later when ruling on the motion to dismiss." *Restocon Corp. v. Metro. Knoxville Airport Auth.*, No. 3:23-CV-142, 2023 WL 6614416, at *2 (E.D. Tenn. Aug. 25, 2023); *see also Bucciarelli v. Nationwide Mut. Ins. Co.*, 662 F. Supp. 2d 809, 814 (E.D. Mich. 2009) ("This Court does not read [Sixth Circuit case law] as requiring the Court to determine futility before it grants a motion to amend the complaint, but rather as stating that futility is a permissible basis for denying a motion to amend."); *Artrip v. Norfolk S. Ry. Co.*, No. 2:08-CV-200, 2008 WL 11452526, *2 (E.D. Tenn. Aug. 15, 2008) ("Strictly from a pragmatic standpoint, if a proposed amendment to a complaint is futile, the safer course of action for both the defendant and the court, or so it would seem, would be to allow amendment."). The Court will apply this approach to Plaintiff's Amended Complaint given the lack of depth in Securitas's arguments and will decline to reach the merits of its futility argument at this time.

Securitas has not demonstrated that Plaintiff acted with undue delay, bad faith, dilatory motive, nor that she failed to cure any deficiencies by previous amendments or that it (or any other party) would be prejudiced by the amendment. And as explained, the Court will not reach the merits of its futility argument. "Rule 15's liberal amendment mandate," *Leary*, 349 F.3d at 906, "provides that the court should freely give leave to amend when justice so requires," and "[t]he Supreme Court has long held that this rule means what it says and that leave to amend should be granted in the absence of a good reason to the contrary." *Kellogg*, 2012 WL 769476, at *3 (first

[38]

citing Fed. R. Civ. P. 15(a)(2); then citing *Foman*, 371 U.S. at 182). In addition to no good reason to *deny* the motion, the Court finds that, "[f]or the reasons related to lack of prejudice and judicial economy outlined above, justice *requires* permitting" Plaintiff to amend. *See Diamond Transport.*, 2020 WL 7253304, at *2 (emphasis added). Therefore, the Amended Complaint is proper under Federal Rule of Civil Procedure 15. *See generally Leary*, 349 F.3d at 905 (citations omitted). Because the Court has determined Plaintiff may amend her complaint under Rule 16 and Rule 15, Plaintiff will be permitted to file the Amended Complaint asserting claims against Securitas.

### 2.    Claims Against the Franchisee Defendants

Plaintiff also seeks leave to amend her Complaint to bring claims against the Franchisee Defendants. *See generally* [R. 89]. The Amended Complaint seeks to assert the same claims against the Franchisee Defendants for violations of the TVPRA as against the other defendants, specifically alleging that they benefitted from her illegal trafficking in violation of 18 U.S.C. § 1595. *See* [R. 89-2, ¶¶ 117–21].

Securitas's response to Plaintiff's motion also makes arguments against the addition of the Franchisee Defendants. *See generally* [R. 90]. Securitas essentially argues, as with the claims against itself, that Plaintiff cannot show good cause for failing to move before the Scheduling Order's deadline. *See generally id.* However, as pointed out by Plaintiff, it is not clear on what authority Securitas makes these arguments on behalf of the Franchisee Defendants or how it would be affected by Plaintiff's claims against the Franchisee Defendants. *See* [R. 93, p. 5 (". . . nor does Securitas explain why it is purportedly objecting on [the Franchisee Defendants'] behalf")]. In any case, the Court must evaluate the merits of Plaintiff's motion because the Court has not received the written consent of the Franchisee Defendants. *See* Fed. R. Civ. P. 15(a)(2) (permitting amendment with either the opposing party's consent or leave of court).

Rule 20 of the Federal Rules of Civil Procedure sets out the standard for when a plaintiff may join multiple defendants in the same lawsuit. *See Dura Glob. Techs., Inc. v. Magna Donnelly Corp.*, No. 2:07-CV-10945, 2011 WL 4532875, at *2 (E.D. Mich. Sept. 30, 2011). Rule 20(a)(2) provides that people may be joined as co-defendants if: "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and [] any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The Court finds, and no party disputes, that Plaintiff's claims against the Franchisee Defendants arise out of the same transaction or occurrence as her initial complaint against the Hotel Defendants and will involve common questions of law and fact. As such, Rule 20 is satisfied.

In addition to Rule 20, Rules 15 and 21 are also relevant. *See Dura Glob. Techs.*, 2011 WL 4532875, at *2 (referencing Fed. R. Civ. P. 15 and Fed. R. Civ. P. 21). As previously explained, Rule 15(a)(2) permits amendment with leave of the Court and states that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 21 governs the addition of non-parties and states that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.

The Sixth Circuit "has not determined whether Rule 21 or Rule 15 controls the amendment of a pleading where the amendment seeks to add parties to the action." *Broyles v. Corr. Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241, at *3 (6th Cir. Jan. 23, 2009). Regardless, "the distinction here is moot as Rule 21 considers the same factors as Rule 15 of prejudice and fairness." *7D Holdings, LLC v. JAWK Holdings LLC*, No. 1:24-CV-00033-GNS-HBB, 2024 WL 5056637, at *4 (W.D. Ky. Dec. 10, 2024) (citing *Broyles*, 2009 WL 3154241, at *3); *see also Hollon v. HCA Healthcare, Inc.*, No. 3:22-CV-52-KKC, 2023 WL 5029889, at *2 (E.D. Ky. Aug. 7, 2023) (noting

[40]

that "Rule 21 may also be at issue [in the case] because the plaintiffs [sought] to add new defendants," but "the standards for adding parties are the same under both Rule 15 and Rule 21, because the plaintiff is required to obtain leave of court under both Rules" (internal quotation marks omitted) (quoting *Dura Glob. Techs.*, 2011 WL 4532875, at \*2)).

Accordingly, the Court considers whether Plaintiff may add these new defendants under Rules 15 and 21. However, as with her claims against Securitas, the Court must first evaluate Plaintiff's proposed amendment under Rule 16's good-cause standard, as the deadline for adding parties has already passed. *See* Fed. R. Civ. P. 16(b)(4); [R. 48, p. 1]. To determine whether a party has demonstrated "good cause," the Court considers its diligence in attempting to meet the requirements in the standing order and potential prejudice to the party opposing the motion. *See Diamond Transp.*, 2020 WL 7253304, at \*1 (citations omitted). In her motion, Plaintiff asserts that Red Roof's "Motion for Leave to add Securitas and the companion Third Party Complaint introduced information that necessitated Plaintiff's Motion for Leave to amend its Complaint and add additional parties. This information included details about the agreements between Securitas and RRI Opco, LLC and Securitas for security services." [R. 89, p. 4].

Even more so than with her claims against Securitas, Plaintiff "certainly could have acted with more diligence" in bringing her claims against the Franchisee Defendants. *See Diamond Transp.*, 2020 WL7253304, at \*2. In the Court's Memorandum Opinion and Order regarding Red Roof and Wyndham's motions to dismiss dated September 5, 2023, [R. 40], the Court stated that "[n]otably, [Plaintiff] has not sued the individual hotel locations at which she was trafficked, but the 'parent hotel brand[s]." *Id.* at 7 (citations omitted). Indeed, the Court dismissed claims of direct liability against Red Roof and Wyndham because "although [Plaintiff's] factual allegations *would sufficiently allege circumstances supporting direct liability against the* franchisee *hotels* or

[41]

potentially vicarious liability claims against the Defendant hotels, they do not support a theory of direct liability against Red Roof or Wyndham." *Id.* at 12 (emphasis added). It strains credibility that Plaintiff, as she alleges, was unaware of potential claims against the Franchisee Defendants until Red Roof filed its Third-Party Complaint against Securitas over six months later in March 2024. *See* [R. 89, p. 4]. However, her delay is not fatal.

In *Blue Rock Invs., LLC v. City of Xenia*, No. 3:17-CV-409, 2019 WL 1291228 (S.D. Ohio Mar. 20, 2019), the court permitted the plaintiffs to amend their complaint to add claims against a third-party defendant nearly nine months after the scheduling order's deadline. *Id.* at *2, 4. The opposing parties asserted that the plaintiffs knew of the information necessary for their amendment approximately four months before the scheduling order's deadline and more than a year before they filed their motion. *Id.* at *2. The plaintiffs, however, argued they did not learn of the alleged actions underlying their claim until much later after extensive discovery was exchanged months after the scheduling order's deadline. *See id.* at *3. In discussing their diligence, the court noted that, upon learning of the basis for their amended complaint, the plaintiffs "moved for leave to amend their [c]omplaint shortly thereafter." *Id.* Therefore, the Court found them diligent and went on to consider prejudice and concerns of judicial economy. *See id.*

Here too, Plaintiff asserts that when Red Roof moved to file its Third-Party Complaint against Securitas, she learned additional "information that necessitated [her] Motion for Leave to amend and add additional parties," such as the Franchisee Defendants. [R.89, p. 4]. As found above, this case is complex and already involves a number of parties at various stages of litigation. "In a case of this complexity, it is understandable that some discovery might be necessary in order for the parties to appreciate fully the scope of claims and defenses," and, under the circumstances,

the Court "cannot say that [P]laintiff is guilty of a lack of diligence." *Cf. Kellogg*, 2012 WL 769476, at *3.

The Court will now consider Plaintiff's arguments about the lack of prejudice to Defendants and judicial economy.[14] *See Carroll*, 2022 WL 14151977, at *4 ("[T]he Court must first find that the moving party proceeded diligently before considering whether the nonmoving party is prejudiced, and only then to ascertain if there are any additional reasons to deny the motion." (citing *Smith*, 595 F. App'x at 479)). As to prejudice, the Court considers "possible prejudice *to the party opposing the modification*." *See Inge*, 281 F.3d at 625 (emphasis added) (citation omitted). Securitas does not argue it would be prejudiced by permitting Plaintiff to assert claims against the Franchisee Defendants, nor can the Court discern any prejudice. *See generally* [R. 90]. Additionally, to the extent it is relevant, the Court does not find any prejudice to the Franchisee Defendants by permitting Plaintiff to amend her Complaint and bring claims against them, given that discovery is ongoing and her claims against them mirror existing claims in the lawsuit. *Cf. Diamond Transp.*, 2020 WL7253304, at *2 (finding no prejudice when "the new claims . . . overlap[ped] considerably with claims already asserted in the case," and "the discovery period [did] not close" for several months). As in *Blue Rock*, granting the motion in this case "may well require the parties to conduct some additional discovery," but "discovery is ongoing and the parties have already jointly requested an extension of the discovery deadline." *See* 2019 WL 1291228, at *3; [R. 104, p. 1 (extending the fact discovery deadline and setting a status conference to adjust expert discovery and dispositive motions deadlines)].

The Court also notes that, because Plaintiff could file a separate action against the Franchisee Defendants, they would suffer no additional prejudice by being joined to the instant

---

[14] The Court again notes that, although Plaintiff did not provide "written consent" as required by Rule 15(a)(2), she represents that "[c]ounsel for the [F]ranchise[e] Defendants has consented for their addition to the case." [R. 89, p. 4].

[43]

action. *Cf. id.* (explaining the plaintiffs' contention that, if the Court denied their motion to amend, they would bring a new action, and finding it "inevitable" that the opposing party would have to defend against the plaintiffs' claims); *Diamond Transp.*, 2020 WL7253304, at *2 (recognizing that "if the Court were to deny leave for [the defendant] to assert its new claims in this action, [it] would likely file a separate action . . . related to the present case, [which] in all likelihood, would end up consolidated with [the pending action]"). Such a posture would result in "effectively" the same outcome as granting Plaintiff's motion "in a manner requiring multiple procedural steps in the interim." *See Diamond Transp.*, 2020 WL7253304, at *2. As previously discussed, "[t]he principle of judicial economy disfavors this course of action." *Id.*; *see also United States v. Ohio*, No. 2:08-CV-00475, 2014 WL 1308718, at *7 (S.D. Ohio Mar. 28, 2014) (filing an additional lawsuit, rather asserting claims in a supplemental pleading, "is precisely the sort of piecemeal litigation and needless waste of judicial resources that Rule 15 was designed to avoid").

For these reasons, the Court finds Plaintiff has established good cause under Federal Rule of Civil Procedure 16(b)(4) to file her Amended Complaint. It will now address the propriety of Plaintiff's Amended Complaint under Rule 15(a), including whether there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Leary*, 349 F.3d at 905 (internal quotation marks omitted) (quoting *Foman*, 371 U.S. at 182)). The Court previously discussed Plaintiff's delay and found a lack of prejudice to any party, and it does not identify any bad faith, dilatory motive, or previous failed amendments. Finally, no party, including Securitas, argues the amendment would be futile and, in any case, the Court would decline to address futility at this stage. *See Restocon*, 2023 WL 6614416, at *2 ("[M]any courts, for reasons of practicality, decline to engage in a futility

analysis at the motion to amend phase and opt instead to assess questions of plausibility later when ruling on the motion to dismiss."); *see also* [R. 90, p. 7 n.24 (arguing only that "[a]ny claim *against Securitas* would be futile," but not addressing the futility of claims against the Franchisee Defendants)]. Plaintiff's Amended Complaint is thus proper under Rule 15.

Because the Court has determined Plaintiff's Amended Complaint is proper under Rules 20, 16, and 15 (and, therefore, 21), Plaintiff's motion will be granted as to her claims against the Franchisee Defendants.

## IV.    RED ROOF'S MOTION FOR LEAVE TO FILE A THIRD-PARTY COMPLAINT

Finally, Red Roof filed an unopposed Motion for Leave to File a Third-Party Complaint. [R. 101]. It seeks to assert claims against Imperial Security Services, Inc. ("Imperial"), a security company Red Roof alleges was hired to perform security services at the Red Roof Inn Place location. *Id.* at 2. The response time for the motion has passed, and no party filed a response. The Court therefore treats the motion as unopposed. *See* L.R. 7.1(c). For the following reasons, the Court will grant the motion.

### A.    Legal Standard for Filing a Third-Party Complaint

Third-party complaints are governed by Federal Rule of Civil Procedure 14. That rule provides in relevant part:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed. R. Civ. P. 14(a)(1). "The purpose of Rule 14 is to permit additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit." *Ray v. Mereen-Johnson, LLC*, No. 3:18-CV-105-RGJ, 2018 WL 11447486, at *1 (W.D. Ky. Dec. 3, 2018)

[45]

(internal quotation marks omitted) (quoting *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008)). "Whether to grant leave for a third-party complaint is within the discretion of the trial court." *Id.* (citation omitted). "And timely motions for leave to implead third parties should be freely granted unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." *Id.* (cleaned up); *see also Botkin v. Tokio Marine & Nichido Fire Ins. Co.*, 956 F. Supp. 2d 795, 802 (E.D. Ky. 2013) (collecting cases and noting that courts have considered the following factors when deciding motions under Rule 14(a)(1): "(1) the timeliness of the motion; (2) the probability of trial delay; (3) the potential for complication of issues at trial; (4) prejudice to the original plaintiff").

### B.      Analysis of Red Roof's Motion

In this case, Red Roof filed its original answer on September 19, 2023. *See* [R. 43]. As it must, it now seeks the Court's leave to file a third-party complaint against Imperial. *See* Fed. R. Civ. P 14(a)(1) ("[T]he third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer."); [R. 101 (filed December 4, 2024)]. As discussed regarding Plaintiff's motion, the Scheduling Order's deadline to submit motions to join parties was March 15, 2024. *See* [R. 48, p. 1]. Because that deadline has passed, the Court must first determine whether there is "good cause" under Federal Rule of Civil Procedure 16 to permit Red Roof's claims against Imperial. *See Am. Mod. Select Ins. Co. v. Kendrick*, No. CIV.A. 5:13-245-DCR, 2014 WL 3081344, at *3 (E.D. Ky. July 7, 2014) (explaining that a defendant seeking to file a third-party complaint after the scheduling order's deadline must first show good cause under Rule 16(b)); *Tucker v. Credit One Bank, N.A.*, No. 4:17-CV-00066-JHM, 2018 WL 2994643, at *3 (W.D. Ky. June 14, 2018) (same); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

[46]

As explained above, in considering whether a party has demonstrated "good cause," the Court considers its diligence in attempting to meet the requirements in the standing order and potential prejudice to the party opposing the motion. *See supra* § III; *Tucker*, 2018 WL 2994643, at *4 (first citing *Inge*, 281 F.3d at 625; then citing *Leary*, 349 F.3d at 806). Red Roof represents (and no other party disputes) that, despite "diligent" searches for security contracts beginning after Plaintiff filed her initial complaint, it did not locate the contract with Imperial until November 2024. [R. 101, p. 4]. It filed the instant motion shortly after, on December 4, 2024. *Id.* The Court finds that Red Roof's diligence weighs in favor of finding good cause. *See Tucker*, 2018 WL 2994643, at *5 (finding party had acted diligently when it filed its Rule 14 motion shortly after discovering the new information). Additionally, the Court observes that, by agreement of the parties, the deadline for fact discovery has been extended until December 1, 2025, and no dispositive motions deadline has been set. *See* [R. 104]; *see Pandora Distrib., LLC v. Ottawa OH, L.L.C.*, No. 3:12-CV-02858, 2015 WL 968007, at *3 (N.D. Ohio Mar. 4, 2015) (finding good cause when "a substantial amount of time ha[d] passed on the calendar since th[e] litigation began," because "the parties remain[ed] in the relatively early stages of the case" and "still [were] conducting discovery and [were] several months away from the dispositive motion deadline."). Finally, Red Roof's motion is unopposed and there is no allegation of prejudice to any party, nor does the Court discern any such prejudice. *See Inge*, 281 F.3d at 625 (noting a "relevant consideration is possible prejudice *to the party opposing the modification*" (emphasis added) (citation omitted)). The Court thus finds Red Roof has demonstrated good cause to amend the deadline for adding parties under Rule 16(b)(4).

The Court next considers whether Rule 14 has been satisfied. The considerations for evaluating a motion to file a third-party complaint under this rule—whether granting the motion

would "would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim"—also favor granting Red Roof's motion. *See Ray*, 2018 WL 11447486, at *1 (cleaned up). As discussed, Plaintiff has not opposed Red Roof's motion, and the Court cannot discern any prejudice to the plaintiff by allowing Red Roof to file their Third-Party Complaint. As discovery is ongoing and the Third-Party Complaint alleges simple indemnity claims, it is unlikely to complicate the trial, let alone unduly so. *See, e.g.*, *Madera v. Petit-Frere*, No. 1:23-CV-00154-GNS-HBB, 2025 WL 406835, at *2 (W.D. Ky. Feb. 5, 2025) ("[T]he question of whether the independent contract imposes an indemnity obligation on [the third-party defendant] does not appear unduly complicated or requiring extensive additional discovery."); *C.D. v. Red Roof Inns, Inc.*, No. 1:23-CV-4347-MHC, 2024 WL 5339456, at *4–5 (N.D. Ga. July 15, 2024) (finding third-party indemnification claims by Red Roof against a security contractor would not unduly complicate trial).

Finally, the Court cannot say on the present record that Red Roof seeks to "foster an obviously unmeritorious claim." *See Kindred Healthcare, Inc. v. Homeland Ins. Co. of N.Y.*, No. 3:15-CV-00433-CRS, 2016 WL 1629373, at *2 (W.D. Ky. Apr. 22, 2016) ("While whether a proposed third-party complaint states *any* claim upon which relief may be granted suggests the claim is obviously unmeritorious, it is unnecessary for the Court to enter into an in-depth motion to dismiss analysis to allow some claims to proceed and others to fall by the wayside. If there is at least one claim that may meet the Rule 12(b)(6) standard, that strongly supports that the complaint states a claim that is not 'obviously unmeritorious.'"). The Court therefore will exercise its discretion to grant Red Roof's motion for leave to file a third-party complaint. *See id.* ("Whether to grant leave to implead is within [the district court's] discretion and 'is essentially a process of balancing the prejudices.'" (quoting *Botkin*, 956 F. Supp. 2d at 801)); *Ray*, 2018 WL 11447486,

at *1 ("Whether to grant leave for a third-party complaint is within the discretion of the trial court.").

## V.    CONCLUSION

Therefore, and the Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows**:**

1. Third-Party Defendant Securitas's Motion to Dismiss, [**R. 80**], is **DENIED.**

2. Plaintiff L.H.'s Motion for Leave to Amend Complaint, [**R. 89**], is **GRANTED.** The Clerk is **DIRECTED** to docket Plaintiff's tendered Amended Complaint, [**R. 89-2**], as the First Amended Complaint in this action.

3. Defendant Red Roof's Motion for Leave to File a Third-Party Complaint, [**R. 101**], is **GRANTED**. The Clerk is **DIRECTED** to docket Red Roof's tendered Third-Party Complaint Against Third-Party Defendant, Imperial Security Services, Inc., [**R. 101-1**]. This the 5th day of March 2025.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY